STATE OF CONNECTICUT *v.* PHILIP BURKE
(AC 16363)

Foti, Schaller and Spear, Js.

Argued November 3—officially released December 22, 1998

*Michelle M. Napoli*, with whom, on the brief, was *Richard M. Marano*, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney and *Steven M. Carney*, assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Philip Burke, appeals from the judgment of conviction, rendered after a jury trial, of reckless endangerment in the first degree in violation of General Statutes § 53a-63 and criminal mischief in the first degree in violation of General Statutes § 53a-115. The defendant claims that the trial court improperly (1) denied his motion for discovery, which requested that the state turn over exculpatory and favorable material concerning the state's witness, and refused to conduct an in camera review of that material, (2) interrupted defense counsel's voir dire and cross-examination of one of the state's witnesses and (3) denied his motion to suppress evidence seized from his person and vehicle following his arrest. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 9, 1994, at approximately 1:20 a.m., Vincent Anglace and Alexandra Anglace were driving their sports utility vehicle north on I-95 in Waterford, in the left lane of a two lane highway. They were approached from the rear by the defendant, who was driving a station wagon. Unable to pass, the defendant moved into the right lane and drove by the Anglaces. As the defendant passed, he fired several shots at the

Anglaces' vehicle. Alexandra Anglace used a mobile telephone to call the police and Vincent Anglace pulled their vehicle into a nearby weigh station because of engine difficulty that occurred shortly after the shots were fired.

Connecticut State Trooper Clifford Labbe responded to the Anglaces' call and met them at the weigh station. The Anglaces described the vehicle from which the shots were fired as a dark colored, older Ford or Mercury station wagon with a tinted rear window and a red and white out of state license plate. Labbe broadcast the description of the station wagon to Connecticut and Rhode Island troopers in the area. When Labbe examined the Anglaces' vehicle, he found three bullet holes in the passenger side. He also found two spent shell casings on the right shoulder of I-95 where the shooting occurred.

Several miles ahead, State Trooper Zacharias Abbey positioned his vehicle near exit 89 of I-95 in Mystic to watch for the vehicle described in Labbe's broadcast. He saw a Ford station wagon that matched the description given by Labbe and began to follow it. The vehicle accelerated to seventy-five miles per hour and began to swerve erratically between the right and left lanes. Abbey did not stop the vehicle because he was awaiting assistance from other troopers. Just beyond exit 93, the defendant stopped his vehicle in the breakdown lane. Abbey parked his vehicle behind the defendant's vehicle, but did not approach it. The defendant remained there for a few moments and then continued north into Rhode Island. Several miles further, Abbey was joined by two Rhode Island state troopers, and they stopped the defendant's vehicle.

The defendant consented to a search of his vehicle. The troopers found a shell casing on the driver's side floor, a rifle, a shotgun and a metal box containing

ammunition. Labbe drove the Anglaces to Rhode Island to view the defendant's vehicle. They could not positively identify the defendant as the shooter, but did positively identify the defendant's vehicle.

The defendant was subsequently arrested and his hands were swabbed with chemicals, which, upon laboratory testing, revealed the presence of gunshot residue. Edward McPhillips, a firearms examiner with the Connecticut state police forensic laboratory, determined that all three shell casings had been fired by the rifle found in the defendant's vehicle.

The defendant testified that he owned the rifle found in his vehicle and that he had fired at the Anglaces' vehicle to scare them. After viewing a photograph of the bullet holes in the vehicle, the defendant stated: "There's no doubt in my mind it probably came from my rifle . . . . I didn't aim it, but that's where it hit." After a trial by jury, the defendant was convicted of reckless endangerment in the first degree and criminal mischief in the first degree. This appeal followed.

I

The defendant first claims that the trial court improperly denied his motion for discovery, which requested that the state turn over exculpatory material concerning a state's witness, and that the court refused to conduct an in camera review of that material. We are unpersuaded.

Pursuant to Practice Book § 741, now § 40-11, *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and *Giglio* v. *United States*, 405 U.S. 150, 154–55, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), the defendant filed a motion for discovery requesting that the state disclose all information with respect to each potential state witness and each informant used by the state during its investigation of the case. Specifically, the defendant requested that the state disclose "any

and all evidence of drug or alcohol abuse, mental illness, and treatment for such conditions, of the informant."

On the first day of trial, Clements Wolenc, a prisoner who was transported to the courthouse with the defendant, told the assistant state's attorney that, earlier that morning, the defendant had confessed his involvement in the crime for which the defendant was on trial. The state promptly disclosed that information to defense counsel, provided him with a copy of Wolenc's criminal record and indicated its desire to call Wolenc to testify. Defense counsel requested that the state comply with his discovery request and that it provide any exculpatory information and psychiatric records.

The state disclosed that it was unaware of any exculpatory information, that Wolenc had an extensive criminal record, that he was not a "professional snitch" and that he had denied any previous psychiatric treatment or drug use. After Wolenc was called to testify, defense counsel requested an opportunity to question Wolenc's competence outside of the presence of the jury. During the questioning, Wolenc denied ever having been treated by a psychiatrist but admitted that he had undergone a psychiatric evaluation and had spoken with a psychiatrist about three or four times in connection with other court cases in Middlesex County. At the request of the defendant, the prosecutor contacted the state's attorney's office in Middlesex County and inquired about any psychiatric reports in their possession. The state's attorney answered that he was aware of several evaluations, but that he believed the contents to be confidential and refused to release the reports. It is this material that the defendant claims the state improperly withheld.

"The United States Supreme Court has held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where

the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the [government]. *Brady* v. *Maryland*, [supra, 373 U.S. 87]; *State* v. *Walker*, 214 Conn. 122, 126, 571 A.2d 686 (1990); *State* v. *Cohane*, 193 Conn. 474, 495, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984); see *State* v. *Milner*, 206 Conn. 512, 539–40, 539 A.2d 80 (1988). This type of violation of the defendant's due process rights is commonly referred to as a *Brady* violation. *State* v. *Morales*, 232 Conn. 707, 714, 657 A.2d 585 (1995)." (Internal quotation marks omitted.) *State* v. *Connelly*, 46 Conn. App. 486, 512, 700 A.2d 694, cert. denied, 244 Conn. 907, 908, 713 A.2d 829, cert. denied, 525 U.S. 907, 119 S. Ct. 245, 142 L. Ed. 2d 201 (1998). "Impeachment evidence as well as exculpatory evidence falls within *Brady*'s definition of evidence favorable to an accused." (Internal quotation marks omitted.) *Demers* v. *State*, 209 Conn. 143, 161, 547 A.2d 28 (1988).

"To prevail on a *Brady* claim, the defendant bears a heavy burden to establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that it was material. *State* v. *Milner*, [supra, 206 Conn. 539]. The test of materiality of nondisclosed exculpatory evidence requires that there be a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . [W]here there is no reasonable probability that disclosure of the exculpatory evidence would have affected the outcome, there is no constitutional violation under *Brady*. . . . *State* v. *McIntyre*, 242 Conn. 318, 323–24, 699 A.2d 911 (1997). [T]he mere possibility that an item of undisclosed evidence might have helped the defense or might have affected the outcome . . . does not establish materiality in the con-

stitutional sense." (Internal quotation marks omitted.) *State* v. *Santiago*, 245 Conn. 301, 311, 715 A.2d 1 (1998).

The defendant's claim fails because he has not proven that the allegedly suppressed evidence was material. After a careful review of the record, we conclude that there is no reasonable probability that the disclosure of Wolenc's psychiatric records would have affected the outcome. Wolenc testified only to the fact that the defendant admitted firing his rifle at the Anglaces' vehicle. The defendant also testified that he owned the rifle found in his station wagon and that he fired the shots that struck the Anglaces' vehicle. Because we determine that confidence in the outcome has not been undermined, any alleged failure of the state to disclose Wolenc's psychiatric records did not deprive the defendant of his constitutional right to a fair trial.

## II

The defendant next claims that the trial court improperly intruded into his cross-examination of Wolenc so as to deprive him of his right to a fair trial. We disagree.

"Impartiality as a core requirement of the right to trial by jury is served not only by the sixth amendment, which applies to the states as well as to the federal government; see, e.g., *Witherspoon* v. *Illinois*, 391 U.S. 510, 529, 88 S. Ct. 1770, 20 L. Ed. 2d 776 (1968) (Douglas, J., concurring); *Parker* v. *Gladden*, 385 U.S. 363, 364, 87 S. Ct. 468, 17 L. Ed. 2d 420 (1966); but also by the due process and equal protection clauses of the fourteenth amendment. See, e.g., *Peters* v. *Kiff*, 407 U.S. 493, 92 S. Ct. 2163, 33 L. Ed. 2d 83 (1972). We have held that the due process clauses of both the United States and Connecticut constitutions have the same meaning and impose similar limitations. *State* v. *Brigandi*, 186 Conn. 521, 542, 442 A.2d 927 (1982). Due process of law guarantees a criminal defendant a fair trial before an impartial judge and jury in a neutral atmosphere. U.S. Const.,

amend. XIV; Conn. Const., art. I, § 8. *State* v. *Fernandez*, 198 Conn. 1, 10, 501 A.2d 1195 (1985); *State* v. *Gordon*, 197 Conn. 413, 424D, 504 A.2d 1020 (1985). *State* v. *Smith*, 200 Conn. 544, 549, 512 A.2d 884 (1986)." (Internal quotation marks omitted.) *State* v. *Cruz*, 212 Conn. 351, 364, 562 A.2d 1071 (1989). Any claim that the trial judge crossed the line between impartiality and advocacy is subject to harmless error analysis. *State* v. *Smith*, supra, 551.

Even assuming arguendo that the trial court did ask improper questions, we fail to see how the defendant was prejudiced in any respect. As stated previously, Wolenc testified that the defendant admitted to firing at the vehicle. The defendant also testified to that fact himself. Any error, therefore, is harmless beyond a reasonable doubt.

## III

The defendant next claims that the trial court improperly denied his motion to suppress items seized from his person and vehicle immediately following his arrest. We are unpersuaded.

The defendant argues that the state troopers did not have probable cause to search his person or his vehicle. He further argues that the troopers did not have a reasonable and articulable suspicion necessary to justify a stop and protective search under *Terry* v. *Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). After a hearing on the defendant's motion to suppress, the trial court found that the defendant consented to the search of his vehicle. *That finding is not challenged on appeal.* On the basis of the trial court's finding, the court properly denied the defendant's motion to suppress. "Consent . . . [is an exception] to the rule excluding evidence obtained as a direct result of a warrantless search and seizure. *State* v. *Ruth*, 181 Conn. 187, 193, 435 A.2d 3 (1980)." *State* v. *Vargas*, 34 Conn.

App. 492, 496, 642 A.2d 47, cert. denied, 230 Conn. 907, 644 A.2d 921 (1994).

The judgment is affirmed.

In this opinion the other judges concurred.