## TRAVIS DAVIS *v.* COMMISSIONER OF CORRECTION (AC 32883)

Gruendel, Alvord and Bear, Js.

598

Argued October 11, 2012—officially released February 5, 2013

*Justine F. Miller*, for the appellant (petitioner).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Sean P. McGuinness*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

BEAR, J. The petitioner, Travis Davis, appeals following the habeas court's granting of his petition for certification to appeal from its judgment denying his amended second petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly rejected his claim of ineffective assistance of habeas counsel in his first habeas proceeding and improperly concluded that the petitioner failed to prove that the state suppressed evidence favorable to him at his criminal trial in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our disposition of the petitioner's claims. As recited by this court in *State* v. *Davis*, 51 Conn. App. 171, 721 A.2d 146 (1998), the jury reasonably could have found the following facts. "On March 8, 1994, the New Haven police department was informed that the [petitioner], for whom the department had an outstanding arrest warrant, was standing at the corner of Chapel and Day Streets in New Haven. The officers had been given a physical description of the [petitioner], and were warned that he was believed to be armed and dangerous. A number of plainclothes officers converged on the location in two cars. After two officers exited the first car, approached the [petitioner] and identified themselves as police officers, the [petitioner] turned to look at them and then ran east on Chapel Street. The two officers, joined by officers from the second car, ran after the [petitioner]. During the pursuit, Detective-Sergeant Michael Sweeney was the officer closest to the [petitioner]. At some point during the pursuit, the [petitioner] pulled a gun from his waistband and kept it pointed toward the ground. Soon thereafter, the [petitioner] turned to look back at the officers, raised his gun and pointed it at Sweeney. Another detective yelled, 'Mike, he's got a gun,' prompting Sweeney to shoot the [petitioner], who fell to the ground. The police recovered the [petitioner's] semiautomatic nine millimeter pistol. The hammer was in the firing position with a round in the chamber and a full magazine of ammunition." Id., 174–75. The petitioner was arrested and, following a jury trial, the petitioner was convicted of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1), attempt to commit assault of a peace officer in violation of General Statutes §§ 53a-49 (a) (2) and 53a-167c (a) (1), commission of a class A, B or C felony with a firearm in violation of General Statutes § 53-202k and

criminal possession of a pistol in violation of General Statutes § 53a-217. Id., 172–73. He also was found guilty of being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a) and being a persistent serious felony offender in violation of § 53a-40 (b). Id., 173. On direct appeal, this court reversed the conviction on the charges of being a persistent dangerous felony offender and committing a class A, B or C felony with a firearm. Id., 174.

The petitioner filed a petition for a writ of habeas corpus alleging ineffective assistance of trial counsel that was decided on February 24, 2000.[1] On March 1, 1999, the first day of the first habeas proceeding, the court granted the petitioner's request to proceed as a self-represented party and to have his habeas counsel, attorney Raymond Rigat, serve as standby counsel. The first habeas court denied the petition for a writ of habeas corpus. It does not appear that the petitioner filed a petition for certification to appeal.

On April 30, 2010, the petitioner filed a second amended petition for a writ of habeas corpus (second habeas petition) alleging ineffective assistance of trial counsel, ineffective assistance of habeas counsel, a violation of his due process rights due to the alleged suppression of evidence and a violation of his due process rights due to the alleged destruction of potentially exculpatory evidence. On May 3, 2010, the state filed a pretrial motion to dismiss the counts alleging ineffective assistance of trial counsel, ineffective assistance of habeas counsel and the due process violation arising from the alleged destruction of potentially exculpatory evidence. During the second habeas trial, the court granted the state's motion to dismiss as to the count

---

[1] Although not provided in the record, we take judicial notice of the first habeas court's memorandum of decision published on February 24, 2000, *Davis* v. *Commissioner of Correction*, Superior Court, judicial district of Hartford, Docket No. CV-97-05773370 (February 24, 2000).

alleging ineffective assistance of trial counsel, and the petitioner withdrew with prejudice the count alleging a violation of his due process rights arising from the alleged destruction of potentially exculpatory evidence. The petitioner's second habeas trial was held on May 3 and 4, 2010. On June 16, 2010, the second habeas court issued its memorandum of decision in which it denied the second habeas petition. On October 20, 2010, the second habeas court granted the petitioner's petition for certification to appeal. This appeal followed.

On appeal, the petitioner claims that that second habeas court improperly rejected his claim of ineffective assistance of habeas counsel in the first habeas proceeding[2] and improperly concluded that the petitioner had failed to prove that the state suppressed evidence favorable to the petitioner in his underlying criminal trial.

I

INEFFECTIVE ASSISTANCE OF HABEAS COUNSEL

The petitioner first claims that the second habeas court improperly rejected his claim of ineffective assistance of his habeas counsel in his first habeas proceeding. Specifically, the petitioner claims that he was

---

[2] The petitioner advances two distinct claims of ineffective assistance of habeas counsel. One of these claims is that his standby counsel, who was appointed after the petitioner opted to represent himself, failed to assist the petitioner in obtaining the services of an independent forensic expert, despite representing to the habeas court that he would provide the petitioner with such assistance. At oral argument before this court, the petitioner conceded, inter alia, that there exists no constitutional right to the effective assistance of standby counsel and that the habeas court did not address this claim in its memorandum of decision. See *State* v. *Guitard*, 61 Conn. App. 531, 535, 765 A.2d 30 ("[A] defendant does not have a state or federal constitutional right to standby counsel. . . . Once a defendant has properly embarked on the path of self-representation, his constitutional right to counsel ceases. . . . [A]fter deciding to proceed pro se, he ha[s] no constitutional right to the effective assistance of counsel in any capacity." [Citation omitted; internal quotation marks omitted.]), cert. denied, 255 Conn. 952, 770 A.2d 32 (2001). Because the petitioner concedes that there was no basis on which the second habeas court could have ruled in his favor on this specific claim

deprived of the effective assistance of his habeas counsel because his habeas counsel failed to conduct an adequate pretrial investigation and was unprepared for trial. The petitioner asserts that because of his first habeas counsel's lack of preparation, he was compelled to proceed as a self-represented party. Additionally, he asserts that he would have prevailed at his first habeas proceeding if his counsel had located and presented certain evidence that he claims would have raised a reasonable doubt about his guilt. We disagree.

"We set forth the appropriate standard of review for a challenge to a denial of a petition for a writ of habeas corpus when certification to appeal is granted. The conclusions reached by the [habeas] court in its decision to [deny a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . . [O]ur review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Citation omitted; internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction*, 130 Conn. App. 291, 294, 21 A.3d 969, cert. denied, 302 Conn. 926, 28 A.3d 337 (2011).

"A habeas petitioner can prevail on a constitutional claim of ineffective assistance of counsel [only if he

___

relating to standby counsel, we accept the petitioner's concession and do not discuss this claim further in this opinion.

can] establish both (1) deficient performance, and (2) actual prejudice. . . . For ineffectiveness claims resulting from guilty verdicts, we apply the two-pronged standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) . . . . To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance. . . . To satisfy the prejudice prong for ineffective assistance claims resulting from guilty verdicts, the petitioner must demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Trotter* v. *Commissioner of Correction*, 139 Conn. App. 653, 658, 56 A.3d 975 (2012). "Constitutionally adequate assistance of counsel includes competent pretrial investigation." *Siemon* v. *Stoughton*, 184 Conn. 547, 554, 440 A.2d 210 (1981).

"[When] applied to a claim of ineffective assistance of prior habeas counsel, the *Strickland* standard requires the petitioner to demonstrate that his prior habeas counsel's performance was ineffective and that this ineffectiveness prejudiced the petitioner's prior habeas proceeding. . . . [T]he petitioner will have to prove that [his] prior habeas counsel, in presenting his claims, was ineffective and that effective representation by habeas counsel establishes a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . .

"A convicted [petitioner's] claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the [petitioner] must show that counsel's performance was deficient.

. . . Second, the [petitioner] must show that the defi-
cient performance prejudiced the defense. Unless a
[petitioner] makes both showings, it cannot be said that
the conviction . . . resulted from a breakdown in the
adversary process that renders the result unworkable.
. . . Only if the petitioner succeeds in [this] herculean
task will he receive a new trial. This new trial would
go to the heart of the underlying conviction to no lesser
extent than if it were a challenge predicated on ineffec-
tive assistance of trial or appellate counsel." (Citation
omitted; internal quotation marks omitted.) *Lapointe*
v. *Commissioner of Correction*, 138 Conn. App. 454,
474–75, 53 A.3d 257 (2012).

The petitioner argues that Rigat provided deficient
performance at the petitioner's first habeas proceeding
because he failed to conduct an adequate pretrial inves-
tigation and was unprepared for trial. We are not per-
suaded.

At the May, 2010 habeas trial, the petitioner presented
the testimony of Rigat, who testified about his general
practices for preparing for habeas trials and his prepara-
tion for the petitioner's first habeas proceeding. Rigat
testified that it was his practice to acquire the trial
counsel's case file, that he had his staff meet with the
petitioner about the petitioner's case and that he sub-
poenaed police officers associated with the petitioner's
arrest as witnesses for the first habeas proceeding. The
petitioner testified that he did not meet with Rigat until
the first day of his first habeas proceeding but that he
spoke to Rigat on the telephone and that a paralegal
and an attorney from Rigat's office had visited him.

In its memorandum of decision, the second habeas
court noted that Rigat "testified quite clearly that he
was indeed prepared and the petitioner did not present
any evidence that could lead the court to conclude
otherwise." The second habeas court found that Rigat

"was indeed adequately prepared to go forward in his representation of the petitioner at the first habeas trial and that the petitioner, although unhappy that . . . Rigat had not met with him before the date of the habeas trial, was not forced to represent himself." The court found credible Rigat's testimony that he was adequately prepared and, therefore, concluded that Rigat was adequately prepared to represent the petitioner at his first habeas proceeding. Furthermore, the petitioner presented no evidence to the second habeas court to demonstrate that Rigat was not adequately prepared. We, therefore, are not persuaded that the second habeas court improperly rejected the petitioner's claim of ineffective assistance of habeas counsel in the first habeas proceeding.

## II

### ALLEGED *BRADY* VIOLATION

The petitioner next claims that the second habeas court improperly concluded that he failed to prove that the state suppressed evidence favorable to him at his criminal trial in violation of *Brady* v. *Maryland,* supra, 373 U.S. 87, and *Giglio* v. *United States,* 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972). Specifically, the petitioner argues that the state suppressed New Haven police Officer Robert Benson's report, which was exculpatory, or at least favorable to him, because it stated that no fingerprints were found on the gun that the petitioner allegedly possessed at the time of his arrest. The crux of the petitioner's argument is that because no fingerprints were found on the gun, the result of the trial would have been different if he had been in possession of Benson's report and was able, therefore, to use the information to support his theory that the police had planted the gun on him.

"The United States Supreme Court has held that the suppression by the prosecution of evidence favorable

to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the [government]. . . . This type of violation of the defendant's due process rights is commonly referred to as a *Brady* violation. . . . To prevail on a *Brady* claim, the defendant bears a heavy burden to establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that it was material." (Citations omitted; internal quotation marks omitted.) *Quintana* v. *Commissioner of Correction*, 55 Conn. App. 426, 436–37, 739 A.2d 701, cert. denied, 252 Conn. 904, 743 A.2d 614 (1999). "Whether the petitioner was deprived of his due process rights due to a *Brady* violation is a question of law, to which we grant plenary review." (Internal quotation marks omitted.) *William B.* v. *Commissioner of Correction*, 128 Conn. App. 478, 484, 17 A.3d 522, cert. denied, 302 Conn. 912, 27 A.3d 371 (2011).

"Impeachment evidence as well as exculpatory evidence falls within *Brady*'s definition of evidence favorable to an accused." (Internal quotation marks omitted.) Id., 487. "The test of materiality of nondisclosed exculpatory evidence requires that there be a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . [W]here there is no reasonable probability that disclosure of the exculpatory evidence would have affected the outcome, there is no constitutional violation under *Brady*." (Internal quotation marks omitted.) *Quintana* v. *Commissioner of Correction*, supra, 55 Conn. App. 438. "Courts have found that improperly withheld impeachment evidence is not material where the testimony of the witness who might have been impeached

is strongly corroborated by additional evidence supporting a guilty verdict." Id., 439.

The petitioner argues that the second habeas court improperly concluded that he failed to prove that the state suppressed Benson's report, which was favorable to him in that it demonstrated that no fingerprints were found on the gun that the petitioner allegedly possessed at the time of his arrest. We are not persuaded.

At the petitioner's second habeas trial, the petitioner's trial counsel testified that four police officers had testified at the petitioner's criminal trial that they saw the petitioner with a gun at the time of his arrest. Rigat testified that several witnesses had testified at the petitioner's criminal trial that the petitioner had possessed a gun at the time of his arrest. Rigat further testified that "the fact that there would be no prints on a gun doesn't mean that the suspect didn't possess the gun, so that's actually kind of well known among most criminal lawyers." In its memorandum of decision denying the second habeas petition, the second habeas court found that "the evidence allegedly suppressed by the state was not favorable to [the petitioner] and cannot, therefore, be classified as *Brady* material." Furthermore, the court found that "[t]he fact that the weapon found at the scene of the shooting did not have any fingerprints is not in and of itself exculpatory . . . ." See, e.g., *State v. Turner*, 62 Conn. App. 376, 391, 771 A.2d 206 (2001) (because state based its case exclusively on eyewitness evidence of defendant's dominion and control over firearm, namely, that officers observed defendant carrying gun, lack of fingerprints on gun not relevant to charges).[3]

---

[3] The testimony in the second habeas trial concerning the petitioner's possession of a firearm is consistent with the eyewitness testimony at his criminal trial. As previously noted, in the petitioner's direct appeal from his conviction, this court set forth some of the facts that reasonably could have been found by the jury as follows: "On March 8, 1994, the New Haven police department was informed that the [petitioner], for whom the department had an outstanding arrest warrant, was standing at the corner of Chapel

After a thorough review of the record, we agree with the second habeas court's conclusions that the fact that the gun "did not have any fingerprints is not in and of itself exculpatory" and that Benson's report "was not favorable to [the petitioner] and cannot, therefore, be classified as *Brady* material." We conclude, therefore, that the habeas court properly determined that the petitioner failed to prove that the state suppressed evidence favorable to him in his underlying criminal trial.

The judgment is affirmed.

In this opinion the other judges concurred.

and Day Streets in New Haven. The officers had been given a physical description of the [petitioner] and were warned that he was believed to be armed and dangerous. A number of plainclothes officers converged on the location in two cars. After two officers exited the first car, approached the [petitioner] and identified themselves as police officers, the [petitioner] turned to look at them and then ran east on Chapel Street. The two officers, joined by officers from the second car, ran after the [petitioner]. During the pursuit, Detective-Sergeant Michael Sweeney was the officer closest to the [petitioner]. At some point during the pursuit, the [petitioner] pulled a gun from his waistband and kept it pointed toward the ground. Soon thereafter, the [petitioner] turned to look back at the officers, raised his gun and pointed it at Sweeney. Another detective yelled, 'Mike, he's got a gun,' prompting Sweeney to shoot the [petitioner], who fell to the ground. The police recovered the [petitioner's] semiautomatic nine millimeter pistol. The hammer was in the firing position with a round in the chamber and a full magazine of ammunition. The [petitioner] was arrested and subsequently convicted of the charges . . . ." *State* v. *Davis*, supra, 51 Conn. App. 174–75.