## WILLIE JOHNSON *v.* COMMISSIONER OF CORRECTION (14378)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BERDON, Js.

Argued December 12, 1991—decision released May 12, 1992

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *Chris Alexy* and *Beth Baran,* assistant state's attorneys, for the appellant (respondent).

*Karen A. Goodrow,* assistant public defender, for the appellee (petitioner).

SHEA, J. In this habeas corpus proceeding, the petitioner, Willie Johnson, alleged that his convictions of sexual assault in the first degree, General Statutes § 53a-70 (a), and of unlawful restraint in the first degree, General Statutes § 53a-95 (a), were obtained in violation of both his federal and state constitutional rights to the effective assistance of counsel at his jury trial. The habeas court rendered judgment granting the petition, thus vacating the convictions and ordering a new trial.

The respondent commissioner of correction, after obtaining the permission of the habeas court pursuant to General Statutes § 52-470 (b), has appealed[1] from the judgment and claims that: (1) the principal basis for the habeas court's conclusion of ineffective assistance of counsel, that the alibi defense advanced at trial was wholly untenable, was fundamentally flawed in view of the petitioner's insistence upon such a defense and his unwillingness to testify; and (2) the court's conclusion that, if the defense of consent, rather than alibi, had been pursued, there would have been a reasonable probability of a different result, was similarly unsupported. We agree with the first of these claims and

---

[1] The respondent appealed to the Appellate Court, but we transferred the appeal to this court pursuant to Practice Book § 4023.

reverse the judgment. It is unnecessary, therefore, to address the second claim.

In the petitioner's unsuccessful direct appeal from the judgment; *State* v. *Johnson*, 22 Conn. App. 477, 578 A.2d 1085, cert. denied, 216 Conn. 817, 580 A.2d 63 (1990); the opinion of the Appellate Court sets forth the facts the jury could reasonably have found as the basis for the petitioner's convictions. We repeat them with some additions. At about 3 a.m. on June 6, 1987, the complainant left her residence at a motel in New Haven, crossed Whalley Avenue and purchased cigarettes at a twenty-four hour gasoline station. When she crossed the street again to return to her residence, she saw the petitioner sitting in a white Chevrolet parked in front of the motel. She recognized him, but could not remember his name. She approached the car and asked the petitioner for a ride to the Brookside housing project. She wanted to visit her sister, who lived there, in order to obtain money for milk and diapers. After she had entered the car, the petitioner drove toward the housing project.

En route the petitioner drove the car off the road and into a secluded driveway, turning off the lights and ignition. He then compelled the complainant to perform fellatio upon him by threatening her with violence. At one point, when she attempted to leave the car, he grabbed her, ripping her coat, and ordered her to continue until he had ejaculated.

After leaving the driveway and driving a short distance, the petitioner stopped and told the complainant to get out of the car. After she had done so, he drove away, but she wrote down the license plate number of the car. She walked to Whalley Avenue where a friend, who was driving a cab, offered her a ride. When she told him what had transpired, he radioed his dispatcher, who called the New Haven police. Within a short time

the complainant met with three police officers in the parking lot of a twenty-four hour food store to which the cab driver had taken her. Although she was distraught, she gave the police the license plate number she had recorded, a description of the car, including its interior, and a physical description of her assailant, including a description of his clothing.

After checking the license plate number, the police determined that the vehicle was registered to Toya Cummings at an address in New Haven. They soon found a white Chevrolet bearing such a marker plate and matching the description given by the complainant parked near the address indicated by the motor vehicle registration records. The complainant was taken to that address in an unmarked police car. When Cummings opened the door of her residence to the police, she admitted her ownership of the Chevrolet. The petitioner, who also lived at that address, came to the door clad only in a towel, as he had been in the shower. After the police stated that the car had been used within the last hour in perpetrating a sexual assault, the petitioner said that he had used the car only until about 6 p.m. on the preceding day. When requested to step outside the house, he complied voluntarily, putting on jeans and following the officers to within twenty feet of the car in which the complainant sat. She identified the petitioner as her assailant, and he was then arrested. A search of the residence occupied by Cummings and the petitioner resulted in the seizure of a shirt and a maroon hat, both of which the complainant had mentioned earlier in describing the clothing worn by her assailant. Later a fingerprint of the complainant was found on the exterior of the white Chevrolet.

At the trial that resulted in his conviction, the petitioner offered the defense of alibi. Cummings, his girlfriend, testified that he was at home with her at the time of the sexual assault. The petitioner did not tes-

tify. A notice of alibi, in accordance with the petitioner's claim of misidentification, had previously been filed by the public defender who initially had represented the petitioner. After that public defender had withdrawn from the case because of a conflict of interest that surfaced during jury selection and required that proceeding to be aborted, a special public defender, Patricia Buck Wolf, was appointed as the petitioner's trial attorney. She had been engaged in the practice of law in this state for approximately five years, having devoted three years to criminal practice exclusively and two years to housing law matters. In addition to numerous minor offenses, she had handled five felony cases, only one of which required a trial.

Of the seven specific allegations of misconduct by his trial counsel that the petitioner asserted in claiming ineffective representation, the habeas court rejected five as "without factual basis." In concluding that trial counsel had been ineffective, the court focused primarily upon its view that the alibi defense advanced at trial in accordance with the petitioner's instructions was "untenable." The court also relied upon the failure of trial counsel to cross-examine the complainant aggressively concerning her account of having solicited a ride from the petitioner at 3 a.m. for the purpose of obtaining money from her sister to buy milk for her four children, after having just spent money to purchase cigarettes, and also concerning her arrest for a drug offense shortly before the trial began. The court regarded these two grounds for its finding of ineffectiveness as interwoven, however, declaring that reliance on the alibi defense precluded a vigorous cross-examination on the complainant's credibility. Having concluded that the performance component of the ineffectiveness of counsel inquiry had been satisfied by the petitioner, the court also held that the requirement of prejudice had been met, because "there is a reason-

able probability that, absent the errors, the factfinder would have a reasonable doubt respecting guilt." *Strickland* v. *Washington,* 466 U.S. 668, 695, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id., 687–88. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id., 688. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Citations omitted.) Id., 689; *Johnson* v. *Commissioner,* 218 Conn. 403, 425, 589 A.2d 1214 (1991).

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland* v. *Washington,* supra, 691. The habeas court found that throughout the trial process "[t]he petitioner persisted in denying that he had ever met the complainant or that he had any sexual contact with her." His girlfriend, Cummings, corroborated his claim that he had been at home with her at the time the crime occurred, and she so testified at trial. A notice of alibi to the same effect was filed by the petitioner's previous counsel. When he was

first confronted by the police, the petitioner denied using the white Chevrolet after 6 p.m. on the day before the crime.

The habeas court, nevertheless, considered the alibi defense untenable because of the strength of the evidence relating to the identification of the car involved in the crime, including the victim's fingerprint found on its exterior. The court recognized that the petitioner's trial counsel had "advanced the only defense he would permit, an alibi defense," and referred to trial counsel's testimony that, even after her discussion of the fingerprint evidence and the possibility of a consent defense, the petitioner opposed any defense but alibi. Trial counsel also testified that, if she had pursued a consent defense despite her client's objections, she feared a courtroom outburst by the petitioner, like the one that had occurred during the direct examination of the complainant, when the petitioner interrupted the prosecutor and shouted profanities that resulted in a warning by the trial court.

In concluding that the alibi defense was so weak as to be untenable and that a defense of consent was a more viable alternative, the habeas court relied upon testimony to that effect by an attorney admitted to practice approximately two years previously, whose experience in the defense of criminal cases was limited to two jury trials and four court trials. He testified that the complainant was a "real candidate for aggressive cross-examination" because of the implausibility of her explanation for her presence on the street and her solicitation of a ride from the petitioner at such an early hour in the morning.

It is speculative, however, to assume, as the habeas court did, that a "vigorous examination" of the complainant would have been fruitful in eliciting any evidence of consent likely to have raised a reasonable

doubt in the minds of the jurors. Her account of having left her four children to go on an errand at 3 a.m. was corroborated by the testimony of the neighbor in whose care she had left them. There was no evidence that the complainant had ever been a prostitute.[2] If the incident were consensual, there was no indication of any motive on her part to implicate the petitioner in a crime. She reported the matter to the police at the first opportunity, when she had obtained a ride from her cab driver friend, who notified the police.

The petitioner's refusal to testify would have been as severe a handicap to a consent defense as it was to the alibi defense raised at trial. A defense of consent based solely upon the unpredictable outcome of the cross-examination of a complaining witness whose credibility was to be challenged primarily on the ground of her innocuous explanation for requesting a ride from the petitioner at 3 a.m. would raise concerns about the wisdom of trial strategy more troublesome than those claimed here, especially when the petitioner persisted in denying any factual basis for such a defense.

The habeas court concluded that trial counsel had been unduly influenced by the petitioner's insistence on the alibi defense and had allowed him "to dictate trial strategy as well as fundamental decisions." We need not decide whether the petitioner would have had the right to present his alibi defense even if a trial strategy based upon consent were clearly the better choice. "Certain decisions relating to the conduct of the case are ultimately for the accused and others are

---

[2] At the time the complainant informed the police officers of the circumstances of the crime, she said that she did not want them to think she was a prostitute. The petitioner claims that his trial counsel's failure to cross-examine the complainant concerning this remark indicates her ineptness. We regard trial counsel's decision not to pursue this subject in the absence of some indication that inquiry would likely be productive as within the broad discretion accorded to counsel in selecting the subjects of cross-examination.

ultimately for defense counsel. The decisions which are to be made by the accused after full discussion with counsel are: (i) what plea to enter; (ii) whether to waive jury trial; and (iii) whether to testify in his or her own behalf." I ABA Standards for Criminal Justice (2d Ed. 1980) c.4, standard 4-5.2 (a). "In general . . . it may be said that the power of decision in matters of trial strategy and tactics rests with the lawyer." Id., commentary, p. 4.67. If the petitioner had elected to testify in support of his alibi, he presumably could have dictated that choice of strategy. He might also have invoked his right to act as his own counsel. *Faretta* v. *California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). The petitioner asserted neither of these prerogatives of a client. The defense of consent to a charge of sexual assault, nevertheless, involves the personal dignity of an accused in a manner that other strategic or tactical decisions do not. The assertion of such a defense, even when the accused does not testify, might have adverse repercussions on his personal life that he would prefer to avoid. "The right to counsel . . . is not an all-or-nothing right, under which a defendant must choose between forgoing the assistance of counsel altogether or relinquishing control over every aspect of his case beyond its most basic structure (i.e., how to plead, whether to present a defense, whether to appeal). A defendant's interest in his case clearly extends to other matters." *Jones* v. *Barnes,* 463 U.S. 745, 759, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) (Brennan, J., dissenting). "The circumstances are extremely rare when counsel is not required to follow his client's instructions on a decision of this nature." *Lowenfield* v. *Phelps,* 817 F.2d 285, 292 (5th Cir. 1987), aff'd, 484 U.S. 231, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988) (choice between insanity and alibi defenses).

This appeal does not afford an appropriate occasion to delineate precisely the extent of a defendant's right

to participate in strategic choices involving such factual issues as whether to rely upon a defense of alibi or consent. There is no evidence to indicate that trial counsel viewed the defense of consent as more likely to be successful than that of alibi, even apart from her client's attitude. She was obliged to consult with the petitioner throughout the proceeding and to discuss possible alternative defenses, as she did. Even when strategic decisions are of such a nature that "the power of decision on them must rest with the lawyer . . . that does not mean that the lawyer should completely ignore the client in making them." I ABA Standards for Criminal Justice (2d Ed. 1980) c.4, standard 4-5.2, commentary, p. 4.68. We conclude that there was nothing improper in trial counsel's consideration of the defendant's objections to any defense but alibi as one of the factors to be weighed in deciding upon the most appropriate defense to pursue.

It is also unnecessary to decide whether at the time of trial the alibi defense was more viable than a defense of consent. "Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland* v. *Washington,* supra, 689. "[S]trategic choices made after thorough investigation of [the] law and facts relevant to plausible options are virtually unchallengeable . . . ." Id., 690–91. "[T]he [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id., 689, quoting *Michel* v. *Louisiana,* 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955). The issue presented is whether trial counsel's decision to proceed with the alibi defense under the circumstances facing her at the trial, including the petitioner's insistence on that defense, was "outside the wide range of professionally competent assistance." *Strickland* v. *Washington,* supra, 690. We conclude that her decision was well within the scope of competent

professional conduct and that the habeas court could not reasonably have concluded otherwise.

The remaining basis for the petitioner's claim of ineffective assistance of trial counsel, inadequate cross-examination of the complainant, is largely dependent on the premise we have rejected that consent was the only appropriate defense because of the strength of the identification evidence. The habeas court regarded the choice of the alibi defense as "precluding a vigorous cross-examination on the issue of the complainant's credibility." We agree with the court that a cross-examination designed to show that the complainant had consented to the sexual act would have been inconsistent, as a practical matter, with the alibi defense and therefore counterproductive.

The petitioner also maintains that the failure to cross-examine the complainant about her arrest on drug charges several days before trial, for the purpose of establishing a motive to testify in favor of the prosecution, indicates the incompetence of trial counsel. Although such a cross-examination would not have been inconsistent with the alibi defense, the existence of such a motive after her arrest would not have reflected upon the accuracy of the complainant's identification of the petitioner at the time of his arrest, when she had no such motive. Wolf's explanation for failing to pursue the charges pending against the complainant on cross-examination was that other questions pertaining to the complainant's recollection of the crime had sufficiently detracted from her credibility, that the complainant was "shaking all over," and that the jurors were beginning to look at her sympathetically. Wolf did not "want to keep her out there any longer" under those circumstances. Differences of opinion among trial lawyers about trial tactics are commonplace. Given that "[j]udicial scrutiny of counsel's performance must be highly deferential," we conclude that the failure to cross-

examine the complainant about the pending drug charges under these circumstances might reasonably be considered sound trial strategy. *Strickland* v. *Washington,* supra, 689.

We conclude that there was insufficient evidence to support the conclusion of the habeas court that Wolf's performance as trial counsel for the petitioner fell below the requisite standard for competent representation of a defendant in a criminal case and that the judgment granting the petition must therefore be reversed.

The judgment is reversed and the case is remanded to the habeas court with direction to render judgment dismissing the petition.

In this opinion the other justices concurred.