[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On February 6, 1984, the petitioner, Thomas Marra, was convicted after a jury trial of murder in violation of General Statutes § 53a-54a(a). On March 23, 1990, the petitioner was sentenced by the court, Freedman, J., to the custody of the commissioner of correction to serve a term of sixty years. The conviction was upheld on appeal, State v. Marra, 222 Conn. 506, (1992). The petitioner is presently in the custody of the commissioner of correction serving the sentence imposed by the court.
On November 25, 1993, the petitioner filed this habeas petition which was subsequently amended on May 28, 1997. In the amended petition the petitioner alleges that he was denied the CT Page 14478 effective assistance of trial counsel and appellate counsel in violation of his constitutional rights, and that his conviction is illegal due to the withholding of certain "Brady" materials by the state[1]. The petitioner was represented at his criminal trial by Attorney Frank Riccio. On appeal the petitioner was represented by Attorney Susan Hankins.
On appeal the Supreme court set forth the following facts that the jury in the criminal trial could reasonably have found. "On February 6, 1984, the defendant asked Byers to drive the fifteen- year-old victim, another associate of the defendant, to the defendant's house later that day. At the same time, the defendant asked Spetrino if he would help him put the victim in a barrel. That evening, Byers drove the victim, Spetrino and Tamara Thiel, the victim's girlfriend, to the defendant's house. The defendant, the victim, Byers and Spetrino entered the defendant's garage, while Thiel remained in the car.
In the garage, the defendant and the victim argued about the defendant's desire that the victim leave Connecticut and reside for a time in Italy, and the victim's refusal to do so. When the matter was not resolved to the defendant's satisfaction, he handed Spetrino an aluminum baseball bat and told Spetrino not to let the victim leave the garage. Thereafter, as the group began to exit the garage, Spetrino struck the victim in the head with the bat. After Spetrino had hit the victim from one to three times, the defendant said, `Let's get him in the refrigerator.' Spetrino then began to drag the victim toward a refrigerator that was located inside the defendant's garage. As he was being dragged, the victim began to speak incoherently, and the defendant said, `Shut up Alex. You didn't go to Italy.' When the victim failed to quiet down, the defendant struck him on the head with the bat numerous times. The additional blows made the victim bleed heavily and caused some of his brain tissue to protrude from his skull. The defendant, Byers and Spetrino then placed the victim into a large refrigerator, and the defendant closed and padlocked the door. The men then loaded the refrigerator into the back of a rented van, and the defendant and Spetrino drove the van to a parking area near the Pequonnock River, where the river empties into the harbor in downtown Bridgeport. After making several holes in the refrigerator with an axe so that it would sink, the defendant and Spetrino slid the refrigerator into the water and it floated away. Although a police dive team searched the harbor for the victim's body and the refrigerator for a period of five months, the divers could locate neither. The CT Page 14479 victim has not been seen or heard from by his family or friends since February 6, 1984." Id., 508.
The court finds the following facts from the habeas hearing held on July 21, 1998. Riccio had represented the petitioner since 1983 when the petitioner pled guilty to charges resulting from his participation in a car theft ring. He had also represented the petitioner in a trial in which the petitioner was charged with the kidnapping of Richard Noel. The Noel trial took place approximately two months prior to the Palmieri trial.
John Solomon was an inspector for the state's attorney's office charged with investigating the petitioner for a series of crimes involving missing persons and unsolved murders in the Bridgeport area. In 1985, Solomon received a report of a missing fifteen-year-old boy, Alex Palmeri. He suspected that the petitioner was involved in the disappearance. In the course of the investigation of this series of disappearances Solomon conducted a number of interviews of two associates of the petitioner, Frank Spetrino and Nicholas Byers. Many of these numerous interviews took place at the state's attorney's office. These interviews were tape recorded by the state by means of a recorder which was placed in front of the subject being interviewed. In addition to this primary recorder a back up tape was made by use of an undisclosed microphone located in the room which transmitted the conversations to a recorder located outside me room. The primary and backup tapes were kept by Solomon in a locked cabinet in his office. During the course of the Noel trial, Riccio discovered the existence of the back up tapes of the interviews of Spetrino and Byers. Riccio was given access to all of these tapes prior to the commencement of the Palmieri trial. During this time period trial counsel also discovered a notebook that was in the possession of the state's attorney which led him to subpoena the records of the United States Coast Guard. These records contained information concerning the deaths of other persons in Long Island Sound. The significance of these records was the conversations to a recorder located outside the room. The primary and backup tapes were kept by Solomon in a locked cabinet in his office. During the course of the Noel trial, Riccio discovered the existence of the back up tapes of the interviews of Spetrino and Byers. Riccio was given access to all of these tapes prior to the commencement of the Palmieri trial. During this time period trial counsel also discovered a notebook that was in the possession of the state's attorney which led him to subpoena the records of the United States Coast Guard. CT Page 14480 These records contained information concerning the deaths of other persons in Long Island Sound. The significance of these records was that it allowed trial counsel to attempt to cast doubt on the evidentiary significance of a sneaker and human foot bones that had been found in the sound and that the state contended were the victim's.
On January 16, 1990, during the course of the criminal trial, trial counsel advised the court of an incident that had occurred while the jury was leaving the court room. Trial counsel stated to the court that one of the sheriffs, while some of the jurors were within hearing range, said "Hold the elevator. We will get him cuffed as soon as the jury goes." Trial counsel indicated that he thought at least two jurors were within range and possibly more. Trial counsel indicated that an inquiry may have to be made to determine how many jurors heard the comment and what the impact, if any, it may have had on them. In an extended colloquy with the court, in which trial counsel considered the various ramifications of these events, he reached the conclusion that he did not wish to risk prejudicing the entire jury by conducting an inquiry that may result in bringing the fact of incarceration to the attention of those who had not heard it or to highlight it to those who had. Trial counsel then consulted with his client and advised the court "Your Honor, I would just like the record to reflect that I have discussed the issue with Mr. Marra. I don't think it would be in his best interest to voir dire the entire panel. I think it would cause more harm than good in the overall effect. So, as a result, I am asking the Court not to make an issue of that with the jury." Petitioner's Exhibit 4, 1082.
Additional facts will be found as required in the treatment of each claim.
I
Ineffective Assistance of Trial and Appellate Counsel
The petitioner claims that trial counsel prevented the petitioner from testifying on his own behalf at the criminal trial. Amended Petition, Count Three, May 28, 1997. The testimony at the habeas trial was contradictory on this point. The petitioner testified that he knew he had the right to testify but trial counsel refused to put him on the stand. He indicated that they had numerous discussions concerning his desire to testify CT Page 14481 and, in fact, argued about it. Further he indicated that if he had been permitted the opportunity to testify that he would have denied his involvement in the murder.
Trial counsel testified that it was his philosophy, admittedly contrary to generally accepted trial strategy, to encourage his clients to testify. Trial counsel further testified that he advised the petitioner in this instance not to testify because of the existence of the tapes. While he was not certain, trial counsel testified that he believed he told the petitioner that if he wished to testify that he should "go ahead."
The right of a defendant to testify in his own behalf is fundamental. "The decisions which are to be made by the accused after full discussion with counsel are: (i)what plea to enter; (ii) whether to waive jury trial; and (iii) whether to testify in his or her own behalf." Johnson v. Commissioner of Correction,222 Conn. 87, 95 (1992)[2].
The court finds trial counsel's testimony more credible. Trial counsel urged the petitioner not to testify but did not prevent him from doing so either by coercion, undue influence, or by merely not calling him as a witness against the petitioner's wishes. Trial counsel was an experience criminal trial lawyer at the time and was aware of the obligations of an attorney in this regard. Additionally the petitioner was a veteran of the criminal justice system and knew of his right to testify on his own defense. The court finds that the petitioner has not sustained his burden of proof on this issue.
The petitioner also claims that appellate counsel provided ineffective assistance by failing to raise the issue that the court failed to grant a mistrial because the petitioner was seen by the jury while in leg irons. Amended Petition, Count Two, May 28, 1997.
At the habeas hearing appellate counsel testified that this issue could not have been appealed because the record was devoid of any mention of this event. She testified that it was her recollection that this event was brought to the attention of the court in a chambers discussion. Appellate counsel also felt that, based upon her experience and her recollection of her review of the transcripts of the criminal trial at the time of taking the appeal, that the court would have found this to be harmless error. Her opinion was based upon her recollection that shortly CT Page 14482 prior to the alleged incident, where the jury may have seen the petitioner in leg irons, a letter was introduced at trial written by the petitioner from prison. It was further her recollection that the court, after admitting the letter, gave a cautionary instruction to the jury about not drawing any inferences concerning the petitioner's alleged incarceration. At that point in the criminal trial it was her feeling that the jury was clearly aware that the petitioner was incarcerated.
Appellate counsel's recollection of these events is faulty. The transcript of the criminal trial indicates that trial counsel did in fact bring this issue to the attention of the court on the record. Petitioner's Exhibit 4, 1078-1082. Also the court was unable to find any evidence in the transcript that the jury was aware of the fact that the petitioner was incarcerated nor that any cautionary instruction had been given by the trial judge.
"As a general proposition, a criminal defendant has the right to appear in court free from physical restraints . . . Grounded in the common law, this right evolved in order to preserve the presumption favoring a criminal defendant's innocence, while eliminating any detrimental effects to the defendant that could result if he were physically restrained in the courtroom . . . The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice. Estelle v. Williams, 425 U.S. 501,503, 96 S.Ct. 1691, 48 L.Ed.2d 126, reh. denied, 426 U.S. 954,96 S.Ct. 3182, 49 L.Ed.2d 1194 (1976) . . . Nonetheless, a defendant's right to appear before the jury unfettered is not absolute . . . A trial court may employ a reasonable means of restraint upon a defendant if, exercising its broad discretion in such matters, the court finds that restraints are reasonably necessary under the circumstances.' (Citations omitted; internal quotation marks omitted.) State v. Tweedy, 219 Conn. 489,505-506, 594 A.2d 906 (1991); see also Practice Book § 892; State v. White, 229 Conn. 125, 145, 640 A.2d 572 (1994); Sekou v. Warden, 216 Conn. 678, 691-92, 583 A.2d 1277 (1990). `In order for a criminal defendant to enjoy the maximum benefit of the presumption of innocence, our courts should make every reasonable effort to present the defendant before the jury in a manner that does not suggest, expressly or impliedly, that he or she is a dangerous character whose guilt is a foregone conclusion . . . The negative connotations of restraints, nevertheless, are without significance unless the fact of the restraints comes to the attention of the jury.' (Citations omitted; internal CT Page 14483 quotation marks omitted.) State v. Tweedy, supra, 219 Conn. 508."State v. Webb, 238 Conn. 454-5, (1996).
The issue presented in this habeas petition is whether appellate counsel provided ineffective assistance by failing to raise on appeal the issue of the failure of the trial judge to grant the petitioner a mistrial. The transcript is clear that while trial counsel considered a request for a mistrial he did not seek one. He expressed concern that if he did so he would be highlighting to the jury members who had not seen the petitioner in shackles the fact of the petitioner's incarceration. The record also reflects that trial counsel took steps to discuss this issue with his client and after that discussion advised the court that they did not wish to pursue this issue.
The court agrees with appellate counsel's conclusion when she testified that the record was inadequate to provide her with an issue on appeal of any substance. Trial counsel decided not to seek an evidentiary hearing to determine which jurors may have heard the comments or seen the petitioner in shackles. The sheriffs who were present were not questioned on the record to determine whether it was possible that the jurors saw the petitioner or heard the comments. Only trial counsel's statements concerning the occurrences are reflected on the record. Trial counsel advised the court that he did not actually witness the event. Therefore the factual basis for the issue on appeal was not established at the trial level. See State v. Webb,238 Conn. 389, 456, (1996). "The petitioner must establish that he would be entitled to a reversal on appeal and that the deficiency raises a probability sufficient to undermine confidence in the verdict."Johnson v. Commissioner, 34 Conn. App. 153, 164. Thus appellate counsel was not deficient in her representation of the petitioner in failing to raise this issue on appeal nor has the petitioner established any prejudice.
II
"Brady" Materials Claim
The next issue raised by the petitioner with respect to the criminal trial is the claimed failure by the state to turn over "Brady" materials to the defendant. Amended Petition, Count One, May 28, 1997. These materials allegedly consisted of the tapes of the state's interviews of Spetrino and Byers and a notebook that was in possession of the state as well as police reports. The CT Page 14484 facts do not support the petitioner's claim. The only credible evidence presented at the habeas hearing, with respect to these claimed "Brady" materials, was the testimony of Riccio and Solomon. Riccio testified that he had access to the tapes and the notebook. Solomon also testified that the tapes were made available to defense counsel at Solomon's office. These materials were available prior to the commencement of the Palmieri trial. Additionally no credible evidence was offered that any police reports were withheld from the defense that would constitute "Brady" materials. Thus, lacking the factual underpinnings to support the first count of his petition, the court finds that no violation of the petitioner's due process rights occurred based on a "Brady" claim.
For all of the foregoing reasons the petition is dismissed.
Zarella, J.