[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Carlos Figueroa alleges in his Revised Amended Petition for Writ of Habeas Corpus that he was denied the effective assistance of counsel because his trial attorney's acts, omissions and conduct were not within the range of competence displayed by lawyers with ordinary training and skill in the criminal law.
More specifically, the petitioner alleges that his attorney failed to: 1) adequately impeach and cross examine witnesses presented by the State, as well as properly object to questions from the State; 2) properly investigate the State's charges and prepare an adequate defense; 3) raise objections to questions and move to strike answers thereto; and 4) properly seek a jury charge on an affirmative defense regarding the diligence of the police to charge the petitioner.
The petitioner argues that but for each and all of these alleged actions and/or omissions, there is a reasonable probability that the outcome of the trial and/or appeal could have been different. This Court disagrees. Therefore, the petition seeking habeas corpus relief is denied
 UNDERLYING FACTS AND PROCEDURAL HISTORY
The underlying facts are summarized in State v. Figueroa, 235 Conn. 145,665 A.2d 63 (1995).[1] That case involved six distinct claims raised by the petitioner in his direct appeal from his criminal convictions. Those claims alleged that the "trial court improperly: 1) denied his motion to suppress the victim's identification of him as the perpetrator; 2) admitted evidence of uncharged misconduct; 3) unfairly marshaled the evidence in its instructions concerning the uncharged misconduct; 4) denied the defendant's request for an adverse inference instruction regarding the destruction of an article of the victim's clothing; 5) denied his motion to dismiss the charges against him predicated on the grounds that the service of the warrant had been untimely; and 6) commented in its instructions explaining the principle of reasonable doubt." Id., at 149-150. The Supreme Court rejected all six claims. CT Page 10453
The appeal stemmed from a 1992 jury trial in which the petitioner was found guilty of sexual assault in the first degree, kidnapping in the first degree, and robbery in the second degree, said offenses having occurred against Jane Doe during the early morning hours of January 1, 1984. The petitioner was sentenced to twenty (20) years for both the sexual assault and kidnapping convictions and to ten (10) years for the robbery conviction, the latter two sentences to run concurrent with the first count's sentence. The total effective sentence was twenty (20) years, to be served consecutive to the sentence imposed in another case involving a different victim, Betty Doe. The petitioner was represented by Attorney William Rivera throughout the entire course of the jury trial.
The petitioner's defense at trial was that he was innocent of the charged offenses.[2] State v. Figueroa, supra, 235 Conn. 149. To support his claim of innocence, the petitioner unsuccessfully relied on five alibi witnesses to support his claim that he had celebrated throughout New Year's Eve into the early morning hours of January 1, 1984. The five alibi witnesses were: Anna Donis, his wife; an aunt, Blanca Vega; Ismael Roman, a long-time friend of the petitioner; Alberto Baiz, Culbro Tobacco Farm employee who lived with the petitioner's aunt, Blanca Vega; and Dolores Nieves, a paramour of one of the petitioner's other aunts.
Four of the five alibi witnesses testified that the petitioner had been in their presence from the evening of New Year's Eve until early morning hours, ranging from about 3:00 A.M. to 7:00 A.M. Respondent's Exhibit 1E (Dec. 29, 1992 Tr., at 46-87). Anna Donis, however, testified that she was with the petitioner up until 11:15 P.M., and then again at approximately 7:30-8:00 A.M. the next morning, and that she had been with the petitioner and a number of his family members when they went from house to house singing songs from about 9:00 P.M. until she left at about 11:15 P.M. Id., at 2-32 through 2-36.
Attorney Rivera also represented the petitioner in the other, factually similar criminal matter. That case involved sexual assault and kidnapping offenses committed upon a different victim, Betty Doe, on February 19, 1984. The petitioner pled "guilty" under Alford[3] to both offenses and was sentenced to serve eighteen (18) years. Jan. 4, 2001 Tr. at 71. It is this sentence, imposed before the jury trial and conviction for the offenses committed against Jane Doe, that the twenty-year sentence imposed in this case runs consecutive to.
In February, 1993, the petitioner filed a complaint against Attorney Rivera. Respondent's Exhibit 12 (Feb. 15, 1993 Complaint). The complaint alleged a variety of claims, including ineffective assistance of CT Page 10454 counsel, which substantially overlap the claims brought forth in this habeas corpus petition. The Local Grievance Panel that considered the grievance determined "that NO PROBABLE CAUSE exists that the attorney referred to is guilty of misconduct nor has there been any ethical violation." (Emphasis in original.) Id., (Apr. 21, 1993 Letter). The Statewide Grievance Panel dismissed the complaint against Attorney Rivera on August 19, 1993, after finding there was "no misconduct on the part of the Respondent warranting disciplinary action." Id., (Aug. 19, 1993 Letter).
On July 16, 1993, the petitioner filed this petition seeking habeas corpus relief. The Supreme Court affirmed the petitioner's convictions two years later. The habeas corpus trial was held on January 4, 2001, during which this Court heard testimony from Joseph McSweegan, the records unit manager for the Hartford Police Department, Attorney Rivera, as well as the petitioner himself.
 INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD
"What constitutes effective assistance of counsel cannot be determined with yardstick precision, but necessarily varies according to the unique circumstances of each representation. The habeas court may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of trial." (Internal citation omitted.) Beasleyv. Commissioner of Correction, 47 Conn. App. 253, 243 Conn. 967,707 A.2d 1268 (1998).
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of the conviction has two components. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that the deficient performance prejudiced the defense. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Stricklandv. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989); Fair v. Warden,211 Conn. 398, 402, 559 A.2d 1094, cert. denied, 493 U.S. 981,110 S.Ct. 512, 107 L.Ed.2d 514 (1989)." Henry v. Commissioner of Correction,60 Conn. App. 313, 316-7 ___ A.2d ___ (2000).
"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. In Strickland, the United States Supreme Court held that judicial scrutiny of counsel's performance CT Page 10455 must be highly deferential. It is all too tempting for a petitioner to second guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense, after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable and professional judgment.
"Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal citations and quotations omitted.) Id., 317-8. Also see Commissioner of Correction v. Rodriguez,222 Conn. 469, 477, 610 A.2d 631 (1992).
"A reviewing court can find against the petitioner on whichever [Strickland prong] is easier. Valeriano v. Bronson, 209 Conn. 75, 85-6,546 A.2d 1380 (1988); Nardini v. Manson, 207 Conn. 118, 124, 540 A.2d 69
(1988); Magnotti v. Meachum, 22 Conn. App. 669, 674, 579 A.2d 553
(1990); Beasley v. Commissioner of Correction, [supra, 47 Conn. App. 264]."Petaway v. Commissioner of Correction, 49 Conn. App. 75, 76 n. 2,712 A.2d 992 (1998).
 I
In his first claim, the petitioner broadly alleges that his trial counsel was ineffective because counsel "failed to adequately impeach and cross-examine witnesses presented by the State, nor did he properly object to questions from the State." Petitioner's Revised Amended Petition, at 3. This Court has thoroughly reviewed the relevant transcripts of the jury trial and finds that this claim is without merit.
In Quintana v. Warden, State Prison, 220 Conn. 1, 5-6, 593 A.2d 964
(1991), the Supreme Court reversed the habeas court's judgment and CT Page 10456 remanded the case for a new hearing on the habeas petition, which the habeas court had granted after finding "that the petitioner's attorney had not aggressively cross-examined the state's principal witness." The Supreme Court held that "while the habeas court acknowledged thatStrickland establishes the appropriate test for deciding claims of ineffective assistance of counsel, the court's conclusions indicated that it did not follow the test set forth in Strickland. Specifically, theStrickland test states that the proper standard for attorney performance is that of reasonably effective assistance. The habeas court, however, stated . . . that the case `should have been pursued with the ultimate of zeal' and that the petitioner's counsel did not `do the best job possible.' Thus, the habeas court applied a `best possible assistance' standard rather than the `reasonably effective assistance' standard mandated by Strickland. Furthermore, Strickland states, the proper measure of attorney performance remains simply reasonableness under prevailing professional norms. Thus, Strickland requires only reasonably effective assistance as measured by the standards of the bar generally. The habeas court, to the contrary, concluded that the petitioner's attorney `had a lot more talent than he brought to bear.' The habeas court, rather than judging the assistance provided by the petitioner's counsel against the prevailing standards of the bar, judged trial counsel's performance against the best he (trial counsel) individually was capable of doing." (Internal citations and quotations omitted.) Id.
Upon remand, the habeas court dismissed the habeas petition. Quintanav. Commissioner of Correction, 55 Conn. App. 426, 431, 739 A.2d 701, cert. denied, 252 Conn. 904, 743 A.2d 614 (1999). The Appellate Court affirmed the habeas court's dismissal, noting that the "right of an accused to confront witnesses against him is guaranteed by thesixth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. A significant aspect of the right of confrontation is the cross-examination of adverse witnesses to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witnesses. Because the core value protected by the confrontation clause is the enhancement of the truth-seeking process, cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses." (Internal citations and quotations omitted.) Id., 441-2.
In the underlying trial at issue in this habeas corpus petition, including arguments on motions prior to and upon conclusion of the trial, the State presented the following witnesses: Betty Doe (victim #2); Charles VanDerscoff (state police trooper); Jane Doe (victim #1); CT Page 10457 Lucy Iannucci (close friend of victim #1); Jill Diamond (long-time acquaintance of victim #1); Michael Dakin (Hartford police officer); Thomas Kizis (manager, Culbro Tobacco farm); William Finegan (former state police trooper); Thomas O'Brien (criminalist in the latent fingerprint section, Connecticut State Police Forensic Lab); and Dr. James O'Brien (expert witness in pharmacology and toxicology). A review of the transcripts encompassing the direct and cross-examination of these witness by trial counsel does not reveal any evidence that Attorney Rivera's representation was anything but effective.
Attorney Rivera testified at the habeas corpus trial as to his training and skill in criminal law. This testimony included the following: that Attorney Rivera had graduated from law school in 1989 and practiced law from 1990 until the time of the petitioner's trial in question; that approximately sixty (60) percent of his practice was devoted to criminal law; and that he had handled "a couple" of Part A criminal matters between 1990 and 1992. January 4, 2001 Tr., at 14-15. There was no evidence presented by the petitioner which would indicate that his trial counsel did not possess the training and skill necessary to competently practice criminal law in this jurisdiction.
The transcript of the criminal trial is replete with objections made by Attorney Rivera during all parts of the trial, especially during the testimony of the above-listed State's witnesses. Many objections were sustained, with counsel consistently taking exception to overruled objections. Consequently, this Court finds that the petitioner has failed to show that his trial counsel's performance was not reasonably competent or that it was not within the range of competence expected of attorneys with ordinary training and skill in criminal law.
During closing arguments at the habeas trial, counsel for petitioner directed the Court's attention to Moffett v. Kolb, 930 F.2d 1156 (7th
Cir. 1991), to support the claim of ineffective assistance of counsel for failure to adequately cross-examine a witness. This Court has reviewedMoffett v. Kolb and concludes that that case is distinguishable from the present case. Moffett concerned "the utter failure of defense counsel to offer evidence which was highly exculpatory and which was not introduced through other means." Haislip v. Attorney General, State of Kan.,992 F.2d 1085 (10th Cir. 1993). The failure to cross-examine arosefrom the critical error of not entering evidence that would have led to outcome-determinative cross-examination. This Court finds that Moffett is clearly distinguishable from the case before it for there is no indication that any of the evidence or potential evidence in the petitioner's underlying case was critical to the defense theory of actual innocence as supported by alibi witnesses. Stated differently, there is nothing that undermines this Court's confidence in the jury verdict. This CT Page 10458 Court finds that the petitioner has failed to demonstrate that his trial counsel did not adequately impeach and cross-examine the State's witnesses.
"In Strickland, the United States Supreme Court held that "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively proveprejudice. Even if a defendant shows that particular errors of counsel were unreasonable the defendant must show that they had an adverse effect on the defense. It is not enough for the defendant to show that theerrors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome'." (Emphasis added.) Fisher v.Commissioner of Correction, 45 Conn. App. 362, 366-7, 696 A.2d 371, cert. denied, 242 Conn. 911, 697 A.2d 364 (1997).
"It will require a very strong showing of omissions by defense counsel to justify overturning a conviction. . . . There [are no] such omissions in this case." Johnson v. Commissioner of Correction, 36 Conn. App. 695,704, 652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995). The petitioner has neither shown that any particular errors by Attorney Rivera during his cross-examination or impeachment of State's witnesses were unreasonable, nor has he affirmatively proven that there was any adverse effect on his defense. Consequently, this Court concludes that the petitioner has not shown counsel's performance to be either deficient or that the result of the jury trial would have been different.
 II
The petitioner's second claim of ineffective assistance of counsel is premised upon trial counsel's failure to properly investigate the State's charges and prepare an adequate defense.[4] By way of example, the petitioner claims that trial counsel failed to properly challenge the photo array and failed to call the investigating officer as a witness. This Court concludes that the petitioner has failed to show that counsel's performance was ineffective based on this claim.
"A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Stricklandv. Washington, supra, 466 U.S. 690; Williams v. Warden, 217 Conn. 419,434, 586 A.2d 582 (1991). "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." CT Page 10459Strickland v. Washington, supra, 466 U.S. 688. Bearing in mind that Attorney Rivera had represented the petitioner previously in a factually-similar case, in which the petitioner pleaded guilty underAlford, the petitioner maintained his innocence and presented his alibi defense as his sole defense in this case. January 4, 2001 Tr., at 68 and 70.
"The reasonableness of an attorney's investigative decisions often depends critically on the information supplied by his client." Williamsv. Warden, supra, 217 Conn. 426; Johnson v. Commissioner of Correction,36 Conn. App. 695, 705, 652 A.2d 1050, cert. denied, 233 Conn. 912,659 A.2d 183 (1995). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." Johnson v. Commissioner of Correction,222 Conn. 87, 92, 608 A.2d 667 (1992), quoting Strickland v. Washington.
The latter Johnson case is particularly relevant, in that it involved a defendant who maintained his innocence throughout the trial and attempted to defend himself only via an alibi defense. Johnson v. Commissioner ofCorrection, supra, 222 Conn. 92. The Johnson habeas court "recognized that the petitioner's trial counsel had `advanced the only defense [the petitioner] would permit, an alibi defense,' . . . [and that] the petitioner opposed any defense but alibi." The habeas court in Johnson
concluded that "the alibi defense was so weak as to be untenable and that defense of consent was a more viable alternative." Id., 93. That court also concluded that "trial counsel had been unduly influenced by the petitioner's insistence on the alibi defense and had allowed him `to dictate trial strategy as well as fundamental decisions'" The habeas court, based on these conclusions, granted the petition.
The Supreme Court reversed the habeas court's judgment and remanded the case with direction to render judgment dismissing the petition. Id., 98. The court, again relying on Strickland, held that "even the best criminal defense attorneys would not defend a particular client in the same way. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. The issue presented is whether trial counsel's decision to proceed with the alibi defense under the circumstances facing her at the trial, including the petitioner's insistence on that defense, was outside the wide range of professionally competent assistance. We conclude that her decision was well within the scope of competent professional conduct and that the habeas court could not reasonably have concluded otherwise." (Internal CT Page 10460 citations and quotations omitted.) Id., 96-7.
Attorney Rivera testified at the habeas corpus trial that the petitioner was "adamant and assured [Attorney Rivera] that his alibi witnesses would come to his defense and help us in the trial[.]" Jan. 4, 2001 Tr., at 18. This reliance on the alibi witnesses resulted in the petitioner and his counsel focusing mainly on these witnesses and the alibi defense at trial. Id. Given these facts, this Court finds that Attorney Rivera's decision to proceed with the alibi defense under these circumstances was not outside the scope of competent professional conduct.
The petitioner's former counsel also testified that throughout the criminal trial and until the jury reported with a verdict, an offer from the State that the petitioner serve four (4) years consecutive to the sentence he was already serving in exchange for a guilty plea remained open.[5] Id., at 24-5. Additionally, the following exchange occurred at the habeas corpus trial:
 ATTY. ROZWASKI: And did you explain to Mr. Figueroa the consequences of not accepting the plea that would happen if the case went forward to a verdict?
 ATTY. RIVERA: I remember distinctly explaining to Mr. Figueroa the problems, and that the offer, what I thought was a good offer of four years he should take it, not only myself, but I also had attorney Sarah Graves who was assisting me make the same offer, and as I sit here today, I seem to remember that offer was made to him almost every single day that we were on trial, and he didn't want any part of it. He just wanted to go through the trial because he felt he had a good alibi.
 ATTY. ROZWASKI: Okay. With respect to the alibi, did you present more than one or two witnesses in support of the alibi defense?
 ATTY. RIVERA: I remember that I presented everyone that was available. Mr. Figueroa and his wife gave me names of people that were at the festivity where they were supposed to be, and every person that was available to testify that we were given their names testified. (Emphasis added.)[6]
Attorney Rivera indicated that both the prior conviction with its CT Page 10461 potential impact on the juror's emotions and the identification of the petitioner by the victim were of concern to him. Id., at 23. This Court finds unbelievable the petitioner's testimony that he could not recall that the State was able to present to the jury the prior sexual assault conviction or that his counsel did not discuss the weakening of the case by this prior conviction getting into evidence. Id., at 68.
The petitioner has specifically alleged that trial counsel failed to properly investigate the State's charges and prepare an adequate defense, as evidenced by counsel's failure to properly challenge the photo array and call the investigating officer as a witness. Neither the photo array nor the potential testimony of Officer Wertz were available, the latter having retired and moved to Florida. At the habeas corpus trial, Attorney Rivera testified that he stipulated to allowing the police reports into evidence because doing so enhanced the defense with respect to the identification because in the reports the victim is describing someone other than Mr. Figueroa. Id., at 53. Additionally, some of the police officers involved in the investigation were either deceased or living out of state and unavailable. Respondent's Exhibit 1B (Dec. 22, 1992 Tr.), at 2-18.
The following additional facts are necessary to the determination of these claims. The offenses against Jane Doe occurred early January 1, 1984, and were reported to the police on January 3, 1984. On that latter date, the victim gave the police a description of the man who had assaulted her. As the Supreme Court noted, the "events between the victim's initial description of her assailant on January 3, 1984, and her identification of the defendant in September, 1984, are unclear." Statev. Figueroa, supra, 235 Conn. 150-1. The victim was shown photographs on one or more occasions between January and March, 1984, in an attempt to identify the assailant. The victim testified that she remembered identifying one photograph on January 3, 1984, but did not sign the back of the photograph. The victim also testified that she was shown a photo array on January 4, 1984, during which she identified one photograph, but again did not sign the back. The victim did not recall viewing a photographic array in March, 1984, though a police report prepared by Officer Wertz in March, 1984, indicated that the victim had been shown a photographic array including a photograph of the petitioner, but that the victim was unable to make an identification. Id., n. 9 and 10; also see
Respondent's Exhibit 1B (Dec. 22, 1992 Tr.), at 2-18.
The victim eventually did identify the petitioner from a photographic array in September, 1984, signing and dating the back of the photograph. This signed photograph was admitted into evidence for purposes of the Motion to Suppress Identification; Id., at 2-40; as well as during the trial; Respondent's Exhibit 1C (Dec. 23, 1992 Tr.), at 3-27. The signed CT Page 10462 photograph was the only original of the photos in the array to be entered into evidence. The array itself was lost, with only a reprint from a duplicating machine being available. Respondent's Exhibit 1B, at 2-87.
On December 22, 1992, the trial court heard arguments on the petitioner's Motion to Suppress Identification. That motion attacked the identification procedure which resulted in the petitioner's identification and arrest as being unnecessarily suggestive; unreliable under the totality of the circumstances surrounding the alleged offense; and tainted due to the lack of preservation of the photo array. Respondent's Exhibit 5. The trial court denied this motion as well as the petitioner's Motion in Limine re Uncharged Crimes and/or Acts of Misconduct; Respondent's Exhibit 7; on December 22, 1992. Respondent's Exhibit 2. The trial court's denial of both motions was upheld by the Supreme Court. State v. Figueroa, supra, 235 Conn. 160 and 168.
In its discussion of the trial court's decision regarding the identification, the Supreme Court noted the following: "As the trial court recognized, the defendant could have explored any weaknesses in the victim's identification during trial. Any uncertainty on the witness' part goes toward the weight of the evidence rather than the admissibility. The weaknesses of identifications can be explored on cross-examination and during counsel's final arguments to the jury. It is a matter for the jury to determine, after cross-examination, what weight to accord the witness' testimony. . . . Absent a very substantial likelihood of irreparable misidentification, we are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." Id., at 159-60.
In a footnote to this above-quoted section, the Supreme Court referenced the following language from the trial court's decision on the Motion to Suppress Identification: "And I know, in the nature of this, that defense counsel has made the Court aware of evidence that can be used to indicate . . . to a fact-finder the lack of reliability from the standpoint of introduction of certain evidence to test her credit as to identification." Id., at 159 n. 19; also see Respondent's Exhibit 2, at 6.
This Court has carefully reviewed relevant transcripts to ascertain these potential weaknesses. It is the Court's conclusion from the record that the trial court's reference toward the end of its decision on the Motion to Suppress Identification evidence pertains to testimony elicited from Jane Doe during cross-examination. That cross-examination was CT Page 10463 preceded by the trial court's examination of Jane Doe with regard to her identification testimony. Respondent's Exhibit 1B, at 2-72 through 2-74. The trial court's examination of the victim for purposes of deciding the Motion to Suppress Identification clearly indicates that the victim did not know whether the photograph she signed in September, 1984, was the same photograph she identified in February or March of that year. Id., at 2-74. Attorney Rivera's cross-examination of Jane Doe continued after the trial court's questioning. Almost immediately thereafter, the witness was excused from the courtroom because the witness had just given confusing and contradictory testimony regarding who showed her the photo album in January, 1984. Id., at 2-75. The petitioner's trial counsel subsequently questioned the witness regarding the description of the assailant she provided to the police, as well as the police report's statement that she did not get a good look at his face. Id., at 2-81 through 2-88.
This Court has carefully reviewed the transcript of trial counsel's cross-examination of Jane Doe during the trial; Respondent's Exhibit 1C (Dec. 23, 1992 Tr.), at 3-31 through 3-137; and his closing arguments to the jury; Respondent's Exhibit 1F (Dec. 30, 1992 Tr.), at 40-74; and cannot find any flaws that rise to the level of rendering counsel's representation ineffective. Trial counsel extensively questioned Jane Doe regarding discrepancies in her descriptions of the assailant and the petitioner. These questions focused on physical distinctions such as height differences and different skin complexions, as well Jane Doe's confusion regarding what officers showed her pictures in January and March and her testimony that she did not get a good look at her assailant. The trial court even allowed a side-by-side comparison of Jane Doe and the petitioner that demonstrated the relative heights and sizes to the jury. Respondent's Exhibit 1C, at 5-58 through 5-59. Trial counsel integrated these discrepancies into his closing arguments, bringing up inconsistencies between Jane Doe's descriptions of her assailant and the petitioner's appearance, Jane Doe's difficulty in picking out her assailant in the photo arrays, and the unavailability of police officers and other potential witnesses.
The petitioner has alleged that his trial counsel was ineffective for not properly investigating the State's charges and for not preparing an adequate defense. Based on the defense relied upon by the petitioner and the information supplied by him to his counsel, this Court finds that Attorney Rivera's actions were reasonable given all the circumstances.Johnson v. Commissioner of Correction, supra, 222 Conn. 92.
Furthermore, this Court also finds that Attorney Rivera's trial strategy of stipulating to allow the police reports into evidence to enhance the defense with respect to the identification was reasonable given the circumstances. Potential harm to the petitioner's case arising CT Page 10464 from testimony from Detective Wertz was at least as likely as any benefit, and given that there is no evidence in this habeas case that substantiates a claim that Officer Wertz's likely testimony would have benefited the petitioner, this Court is unable to conclude that the petitioner's defense was prejudiced in any way.
This Court, therefore, concludes that Attorney Rivera effectively presented the petitioner's alibi defense in the underlying trial. Attorney Rivera's challenges to the photo arrays and stipulation to the police report instead of calling Officer Wertz as a witness are due a strong presumption that they were within the wide range of reasonable professional assistance. The petitioner has failed to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy or that counsel's conduct was outside the wide range of professionally competent assistance.
The petitioner has also failed to undermine confidence in the outcome of the underlying trial. The jury in this case considered the discrepancies in the physical descriptions, weighed the credibility of the alibi witnesses, and accorded the uncharged misconduct its proper emphasis. The petitioner has not shown that there is a reasonable probability that the result of the proceeding would have been any different. Thus, this Court concludes that the petitioner's second claim is also without merit.
 III
The petitioner's third claim of ineffective assistance of counsel is premised upon trial counsel's failure to object to questions and move to strike answers thereto "propounded by the state and witnesses concerning the allegations against the Petitioner, said objections grounded in relevancy, prior uncharged misconduct, and so prejudicial as to outweigh the probative value of the testimony." Revised Amended Petition, at 3. This Court finds that this claim is, in substance, identical to that made in the first claim. For the same reasons enunciated for the first claim, this Court also concludes that trial counsel's performance at trial was well within the range of reasonably competent professional assistance.
 IV
The petitioner's final claim is that Attorney Rivera failed to properly seek a jury charge on an affirmative defense regarding the diligence of the police to charge the petitioner. Specifically, the petitioner's trial counsel is alleged to have failed to seek a jury charge on the statute of limitations, "an affirmative defense . . . [which places] the burden of [proof] on the defendant to prove the elements of the defense by a CT Page 10465 preponderance of the evidence." (Internal citations omitted.) State v.Figueroa, supra, 235 Conn. 177-8. For the following reasons, this Court concludes that this final claim is also without merit.
Attorney Rivera filed a Motion to Dismiss "prior to trial . . . to dismiss the charges of sexual assault and robbery on the basis that the state had failed to prosecute him within the statute of limitations as prescribed in General Statutes § 54-193." Id., at 175-6; also see
Respondent's Exhibit 9. More specifically, it was argued that "service of the arrest warrant had been unreasonably delayed and that the prosecution had not been initiated within the applicable statute of limitations."State v. Figueroa, supra, 235 Conn. 175. The evidentiary hearing on this motion transpired post-trial, after which the trial court denied the motion to dismiss. Respondent's Exhibit 1F, at 122-168. The Supreme Court affirmed the trial court's denial. State v. Figueroa, 235 Conn. 175-182.
"The trial court denied the defendant's motion to dismiss, concluding that the defendant had not sustained his burden of proof. The trial court found that the defendant's witnesses were not credible and that, even though the September, 1984 warrant had been lost, state officials can be presumed to perform their duties and it was proper to infer that the September, 1984 warrant had been issued and that service of the warrant had not been unreasonably delayed." Id., at 177.
"[I]f the defendant puts forward evidence to suggest that the state reasonably could have executed the warrant sooner, the issue of whether the state executed the warrant within a reasonable period of time is properly a question of fact for the jury." (Internal quotations omitted.)Id., 178. "The defendant, however, did not ask that the statute of limitations be presented to the jury as an affirmative defense. Instead, he asked that the charge be dismissed as an issue of law. Although the issue of the diligence by the police in executing the warrant may have been sufficiently presented to create an issue of fact for the jury, in the absence of a request to charge, the trial court was under no duty to charge the jury on the statute of limitations." Id., at 182.
"The statute of limitations is not a jurisdictional bar to prosecution. The statute of limitations is an affirmative defense. Consequently, the burden was on the defendant to prove the elements of that defense by a preponderance of the evidence. An affirmative defense is presented in the orderly course of a criminal trial after the prosecution has presented its case-in-chief." (Internal citations and quotations omitted.) State v. Harrison, 34 Conn. App. 473, 491-2,642 A.2d 36 (1994).
In State v. Parsons, 28 Conn. App. 91, 96-97, 612 A.2d 73, cert. CT Page 10466 denied, 223 Conn. 920, 614 A.2d 829 (1992), "the defendant raised the statute of limitations by way of a motion to dismiss. After the trial court denied the motion, however, the defendant failed to raise the defense at trial and he failed to submit a request to charge thereon. The fact that the trial court, in its discretion, entertained the defendant's motion to dismiss prior to trial does not automatically convert an affirmative defense into a right to be free of the trial itself. As an affirmative defense, the statute of limitations provides the defendant with a shield, not against prosecution itself, but against successful prosecution."
There is no evidence in the case at hand that allows this Court to make a determination that this tactical choice by trial counsel was outside the wide range of reasonably competent professional assistance. "The petitioner has failed to demonstrate that counsel's failure to request the jury instruction . . . was anything other than a considered choice among various reasonable trial strategies." Chace v. Bronson, 19 Conn. App. 674,683, 564 A.2d 303, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989).
This Court finds that the petitioner has not shown any prejudice arising out of the fact that his trial counsel chose to pursue the motion to dismiss in the manner he did and cannot find that the jury would have reached a different conclusion than the trial court.
Thus, in addition to the determination that trial counsel's performance was within the bounds of effective assistance of counsel, the petitioner has also been unable to demonstrate any prejudice to his defense. This final claim of ineffective assistance of counsel also fails.
 CONCLUSION
The petitioner has alleged that he was denied the effective assistance of counsel because his trial attorney's acts, omissions and conduct were not within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. This Court has undertaken an extensive and thorough review of the underlying trial's transcripts and has concluded that all claims raised are without merit and fail one or both of the Strickland prongs. Consequently, the petition seeking habeas corpus relief is denied.
BY THE COURT,
HON. DAVID M. BARRY, JTR