******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSE I. RIVERA
(AC 36439)

Beach, Sheldon and Borden, Js.

*Argued May 22—officially released August 12, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Hauser, J.)

*Annacarina Jacob*, senior assistant public defender,
for the appellant (defendant).

*Katherine E. Donoghue*, deputy assistant state's
attorney, with whom, on the brief, were *John C. Smriga*,
state's attorney, and *Joseph T. Corradino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The defendant, Jose I. Rivera, appeals from the judgment of conviction rendered after a jury trial of two counts of attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a (a), two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and one count of carrying a pistol without a permit in violation of General Statutes § 29-35 (a). In this appeal, the defendant claims that the trial court improperly denied his motion for a mistrial, predicated on the state's failure to disclose information that could have been used to impeach the credibility of one of the state's witnesses, thereby violating: (1) his fourteenth amendment due process right to obtain impeachment evidence, as set forth in *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); and (2) his right to confrontation pursuant to the sixth and fourteenth amendments to the United States constitution.[1] We disagree and, accordingly, affirm the judgment of the trial court.

The defendant was arrested and charged with two counts of attempted murder, two counts of assault in the first degree, one count of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-48, and one count of carrying a pistol without a permit. During the course of the jury trial on those charges, the defendant moved for a mistrial on the ground that the state had wrongfully withheld information that could have been used to impeach the credibility of one of the state's witnesses. The court provided the defendant with the opportunity to examine the alleged impeachment evidence, and subsequently, to cross-examine the subject witness. The defendant declined the opportunity to conduct such cross-examination. The jury found the defendant not guilty on the charge of conspiracy to commit assault in the first degree and found him guilty on the remaining charges. The court accepted the verdict and sentenced the defendant to a total effective term of thirty-two years incarceration and twelve years of special parole.[2] This appeal followed.

The following facts, as the jury reasonably could have found them, and procedural history are relevant to our disposition of this case. On the evening of July 29, 2010, the defendant arranged to meet Derrick Lopez to purchase marijuana from him. Lopez drove to the arranged spot with his friend, Hakeem Webster, where they met the defendant and an unidentified man. The defendant and the unidentified man entered the backseat of Lopez' car, at which point the defendant directed Lopez to drive around the corner. Lopez did as directed and, as he stopped the car, the defendant pulled out a gun and held it to Lopez' face. As Lopez tried to grab the gun, the defendant shot at both Lopez and Webster. The defendant shot Lopez five times and Webster two times.

The defendant and the unidentified man fled the crime scene.

Prior to the commencement of the jury trial, the court granted the defendant's motion for discovery requesting that the state disclose any exculpatory information and material. The state complied with the request pursuant to Practice Book § 40-7. On March 29, 2012, during the course of jury selection, the state amended its witness list to include Kimberly Biehn, a detective with the Bridgeport Police Department. On the first day of trial, April 3, 2012, Biehn testified that she and another detective processed Lopez' vehicle to recover potential evidence and that, in the course of such processing, they found a spent shell casing and a bag of marijuana in the vehicle.

On April 9, 2012, in the absence of the jury, the defendant informed the court that, subsequent to Biehn's testimony, he discovered that Biehn had been arrested and/or suspended from the Bridgeport Police Department due to "conduct . . . involving an insurance fraud and perhaps conduct unbecoming of an officer . . . ." The defendant further stated, "[c]ertainly, this was information that needed to be explored, perhaps in her cross-examination. It would have an impact on her credibility or perhaps her testimony here. Because of the late disclosure of Detective Biehn, we have not been able to explore information that could have been essential to her cross-examination . . . ." The defendant stated that he was unable to explore Biehn's personnel file. In light of the newly discovered information, the defendant requested that the court either suspend the case to afford him time to explore Biehn's purported arrest and/or suspension from the Bridgeport Police Department (arrest/suspension) or, alternatively, that it declare a mistrial.

The state responded, "I believe the matter with respect to Detective Biehn was resolved by way of either a nolle or a dismissal, which means that there . . . is no criminal case to cross-examine on. And as far as personnel, [the] police department often suspends police officers when charges are brought, but that's only because . . . the charges are brought, not because of any kind of conviction." The court continued the trial for four days to allow the defendant to conduct an investigation with respect to Biehn's alleged arrest/suspension. The court stated that upon recommencement of the trial, it would allow the defendant to call Biehn to the witness stand as a hostile witness during the defendant's case-in-chief, thereby affording him the opportunity to conduct "a broad cross-examination of [Biehn]."

Following the four day hiatus, the trial continued on April 16, 2012. In the absence of the jury, the court once again stated that it would allow Biehn to testify as a hostile witness. The defendant, however, responded, "I

did serve a subpoena on Detective Biehn as well as a subpoena requesting her personnel file . . . and I looked into it over the weekend. I don't see where I have a burden to put Detective Biehn on . . . and treat her like a hostile witness and cross-examine her. I believe . . . I had the right to cross-examine her when she was here and testifying, which is one of the risks we ran with the late disclosure. . . . I don't believe that I'm going to put her on because the defense does not have a burden here. The . . . burden rested with the state, and the only right we had was to cross-examine her, and that cross-examination has since come and gone. So, I don't believe I'm [going to] take the court up on its offer, number one. And number two, I don't really see any authority for me to do that, to put on a state's witness and treat her as a hostile witness and cross-examine her." The defendant further stated that, although he had subpoenaed Biehn's personnel records, the records had not been delivered to the court for his review.

The court responded as follows: "[C]oncerning Detective Biehn testifying in the manner . . . that I outlined, I think the court has the . . . inherent power to try to right what was . . . omitted by the . . . state, and the state did not list her as a witness . . . until the jury selection was almost over. So . . . the court feels that . . . the alternative that [it] set up was a fair option, and if you don't want to take advantage of that option, you have the right . . . not to take it. But . . . the court feels it has the authority to . . . do that, and . . . the option remains out there for you if you want it."

With respect to the contents of Biehn's personnel file, the state asserted that because the defendant stated that he was not going to cross-examine Biehn, any issues with respect to Biehn's personnel file were moot. The defendant responded, "Judge, the file's not here, we don't know what's in it. Did I want to look at it? Yes, but it's not here. . . . I suggest we move on at this point." The court stated, "you've decided not to take advantage of the option and, therefore, there's no . . . further need for . . . testimony from Detective Biehn." The defendant subsequently moved for a judgment of acquittal, which the court denied.

We first set forth the standard of review with respect to the trial court's decision to deny the defendant's motion for a mistrial. "While the remedy of a mistrial is permitted under the rules of practice, it is not favored. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that as a result of some occurrence during trial a party has been denied the opportunity for a fair trial. . . . The trial court enjoys wide discretion in deciding whether a mistrial is warranted . . . and its evaluation as to

events occurring before the jury is to be accorded the highest deference. . . . Every reasonable presumption will be given in favor of the trial court's ruling . . . because the trial court, which has a firsthand impression of the jury, is in the best position to evaluate the critical question of whether the juror's or jurors' exposure has prejudiced a defendant. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion. . . . A reviewing court gives great weight to curative instructions in assessing error." (Internal quotation marks omitted.) *Camacho* v. *Commissioner of Correction*, 148 Conn. App. 488, 502, 84 A.3d 1246, cert. denied, 311 Conn. 937, 88 A.3d 1227 (2014).

I

We now address the defendant's claim that the court improperly denied his motion for a mistrial on the basis of his contention that the state violated his fourteenth amendment right to due process by withholding information regarding Biehn's alleged arrest/suspension in contravention of the requirements of *Brady* v. *Maryland*, supra, 373 U.S. 87. As a threshold matter, we note that for the purposes of this appeal, we assume, without deciding, that information regarding Biehn's alleged arrest/suspension would have been admissible at trial for the purpose of impeaching her credibility.[3] The central issue, therefore, is whether such information was suppressed in violation of the defendant's constitutional right to due process. We conclude that it was not.

The applicable standard of review with respect to an alleged *Brady* violation is as follows. "In *Brady* v. *Maryland*, supra, 373 U.S. 87, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (Internal quotation marks omitted.) *Morant* v. *Commissioner of Correction*, 117 Conn. App. 279, 284–85, 979 A.2d 507, cert. denied, 294 Conn. 906, 982 A.2d 1080 (2009). "[T]he *Brady* rule applies not just to exculpatory evidence, but also to impeachment evidence . . . which, broadly defined, is evidence having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." (Citations omitted; internal quotation marks omitted.) *Adams* v. *Commissioner of Correction*, 309 Conn. 359, 369–70, 71 A.3d 512 (2013). "In order to prove a *Brady* violation, the defendant must show: (1) that the prosecution suppressed evidence after a request by the defense; (2) that the suppressed evidence was favorable to the defense; and (3) that the evidence was material." (Internal quotation marks omitted.) *State* v. *Dickman*, 146 Conn. App. 17, 41, 75 A.3d 780, cert. denied, 310 Conn. 948, 80 A.3d 905 (2013).

"[E]vidence known to the defendant or his counsel, or that is disclosed, even if during trial, is not considered suppressed as that term is used in *Brady*. . . . Even if evidence is not deemed suppressed under *Brady* because it is disclosed during trial, however, the defendant nevertheless may be prejudiced if he is unable to use the evidence because of the late disclosure. . . . Under these circumstances, the defendant bears the burden of proving that he was prejudiced by the state's failure to make the information available to him at an earlier time." (Citations omitted; internal quotation marks omitted.) *State* v. *Guilbert*, 306 Conn. 218, 272, 49 A.3d 705 (2012). "Whether the [defendant] was deprived of his due process rights due to a *Brady* violation is a question of law, to which we grant plenary review." (Internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, 140 Conn. App. 597, 606, 59 A.3d 403, cert. denied, 308 Conn. 920, 62 A.3d 1133 (2013).

We conclude that the defendant failed to satisfy his burden of demonstrating that the state suppressed information with respect to Biehn's alleged arrest/suspension and, further, that he was prejudiced by the delayed disclosure of such information. During the state's case-in-chief, but subsequent to Biehn's testimony, the defendant learned of Biehn's alleged arrest/suspension. The court suspended the trial for four days to afford the defendant time to conduct an adequate investigation into the information. When the trial reconvened, the court provided the defendant with the opportunity to call Biehn as a hostile witness in order to cross-examine her about her alleged arrest/suspension. "[E]vidence known to the defendant or his counsel, or that is disclosed, even if during trial, is not considered suppressed as that term is used in *Brady*." (Internal quotation marks omitted.) *State* v. *Guilbert*, supra, 306 Conn. 272. In light of the procedures implemented by the court, we conclude that the alleged impeachment information was not suppressed within the meaning of *Brady* because the defendant obtained it in time to use it at trial, namely, through questioning Biehn as a hostile witness.

Moreover, the defendant was not prejudiced by the late discovery of Biehn's alleged arrest/suspension. Pursuant to *Brady*, "the defendant bears the burden of proving that he was prejudiced by the state's failure to make the information available to him at an earlier time." (Internal quotation marks omitted.) Id. Here, the court afforded the defendant the opportunity to cross-examine Biehn about her alleged arrest/suspension, but the defendant failed to avail himself of that opportunity. Furthermore, following the defendant's decision not to cross-examine Biehn, the defendant also declined the opportunity to review Biehn's police department personnel file for potential impeachment evidence, stating,

"Judge, the file's not here . . . . I suggest we move on at this point." Thus, the defendant failed to make any showing that it was likely that production of Biehn's personnel file, which he had subpoenaed, would have led to the discovery of impeachment evidence. The defendant has therefore failed to meet his burden of demonstrating prejudice.[4] Consequently, the court did not violate the defendant's right to due process, and its denial of the defendant's motion for a mistrial was not improper.

II

We next address the defendant's claim that the court improperly denied his motion for a mistrial because his delayed discovery of Biehn's alleged arrest/suspension violated his constitutional right to confrontation. As in part I of this opinion, for the purposes of resolving this claim, we assume, without deciding, that information regarding Biehn's alleged arrest/suspension would have been admissible at trial for the purpose of impeaching her credibility. Operating under this assumption, we conclude that the trial court did not violate the defendant's constitutional right to confrontation by denying his motion for a mistrial.

At trial, the court provided the defendant with the opportunity to take curative action to remediate any potential harm caused by the state's failure to disclose information regarding Biehn's alleged arrest/suspension. The court informed the defendant that he was permitted to call Biehn to testify as a hostile witness during the defendant's case-in-chief, effectively allowing him to cross-examine Biehn in light of the alleged impeachment information. The defendant, however, declined to avail himself of this opportunity, stating that the court did not have the authority to allow him to question Biehn in the prescribed manner.

Contrary to the defendant's assertion, however, the court had the authority to restructure the trial in a manner that enabled him to cross-examine Biehn during the defendant's case-in-chief. Indeed, the court's actions were aligned with the sound policy that courts are afforded wide latitude to redress potentially harmful improprieties in order to avoid "the drastic remedy of a mistrial . . . ." (Internal quotation marks omitted.) *Camacho* v. *Commissioner of Correction*, supra, 148 Conn. App. 502. Specifically, with respect to the curative action offered by the court in this case, we note that "[t]he [c]onfrontation [c]lause guarantees *only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Pierre*, 277 Conn. 42, 81, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006). Thus, the fact that the defendant would have *preferred* to cross-examine Biehn at a different time and in a

different manner does not constitute a violation of his constitutional right to confrontation. We therefore conclude that the court did not improperly deny the defendant's motion for a mistrial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant also claims that the state's failure to disclose impeachment information violated his right to a fair trial pursuant to article first, § 8, of the constitution of Connecticut. Because the defendant failed to provide a separate analysis of this claim under the Connecticut constitution, we decline to afford it review. See *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992).

[2] In his brief to this court, the defendant also relied on this court's decision in *State* v. *Brown*, 133 Conn. App. 140, 34 A.3d 1007 (2012), rev'd, 310 Conn. 693, 80 A.3d 878 (2013), in support of his claim that the trial court illegally sentenced him by imposing a period of special parole that exceeded ten years. At oral argument before this court, the defendant abandoned this claim, conceding that it was meritless in light of our Supreme Court's decision in *State* v. *Brown*, 310 Conn. 693, 80 A.3d 878 (2013), which reversed this court's decision with respect to the maximum period of special parole, and which was decided subsequent to the defendant's filing of his appellate brief. In light of this concession, we do not review this claim.

[3] With respect to Biehn's arrest, the state contends that, although Biehn was arrested, the charges against her were dismissed and, consequently, the state did not have a duty to disclose them because they were erased pursuant to General Statutes § 54-142a (a). Because we assume, without deciding, that information existed that the defendant properly could have used for the purpose of impeaching Biehn's credibility, we need not address the applicability of § 54-142a (a).

[4] The defendant additionally claims that the state violated Practice Book § 40-13 (a), which requires the state to "disclose to the defendant any record of felony convictions of the witnesses known to the prosecuting authority and any record of felony or misdemeanor charges pending against the witnesses known to the prosecuting authority." In light of our determination that the state did not suppress information pursuant to *Brady*, we likewise conclude that such information was not wrongfully withheld pursuant to Practice Book § 40-13 (a).